UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CITY OF BROCKTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | No. 1:11-cv-04665-PGG |
| Plaintiffs, | |
| v. | |
| AVON PRODUCTS, INC.; ANDREA JUNG; CHARLES W. CRAMB; STEPHEN IBBOTSON; SIMON N.R. HARFORD; RICHARD S. FOGGIO; W. DON CORNWELL; EDWARD T. FOGERTY; FRED HASSAN; MARIA ELENA LAGOMASINO; ANN S. MOORE; PAUL S. PRESSLER; GARY M. RODKIN; PAULA STERN; LAWRENCE A. WEINBACH; and V. ANN HAILEY, | |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
LBBW ASSET MANAGEMENT INVESTMENTGESELLSCHAFTMBH AND SGSS
DEUTSCHLAND KAPITALANLAGEGESELLSCHAFT MBH FOR APPOINTMENT
<u>AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF COUNSEL</u>**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ...................................................................................................................1
FACTUAL BACKGROUND...................................................................................................2
PROCEDURAL BACKGROUND...........................................................................................3
ARGUMENT............................................................................................................................4
I.   LBBW AND SGSS SHOULD BE APPOINTED LEAD PLAINTIFFS ...........................4
     A.   The Legal Requirements Under The PSLRA .............................................4
     B.   LBBW And SGSS Satisfy The Lead Plaintiff Requirements Of The
          Exchange Act ..............................................................................................4
          1.   LBBW and SGSS Have Complied with the Exchange Act and
               Should Be Appointed Lead Plaintiffs .............................................4
          2.   LBBW and SGSS Are Precisely the Type of Lead Plaintiffs
               Congress Envisioned When It Passed the PSLRA .........................5
          3.   LBBW and SGSS Have the Requisite Financial Interest in the
               Relief Sought by the Class..............................................................6
          4.   LBBW and SGSS Otherwise Satisfy the Requirements of Rule 23 ............6
II.  THE COURT SHOULD APPROVE LBBW'S AND SGSS'S CHOICE OF
     COUNSEL .........................................................................................................................9
CONCLUSION.......................................................................................................................10

TABLE OF AUTHORITIES

**CASES**

Bassin v. deCODE Genetics, Inc.,
   230 F.R.D. 313 (S.D.N.Y. 2005) ................................................................................... 4

Chisholm v. Transouth Financial Corp.,
   184 F.R.D. 556 (E.D. Va. 1999) ..................................................................................... 7

Dietrich v. Bauer,
   192 F.R.D. 119 (S.D.N.Y. 2000) ................................................................................... 7

Glauser v. EVCI Center Colleges Holding Corp.,
   236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................... passim

Greebel v. FTP Software, Inc.,
   939 F. Supp. 57 (D. Mass. 1996) ................................................................................... 3

In re Drexel Burnham Lambert Group, Inc.,
   960 F.2d 285, 291 (2d Cir. 1992) .................................................................................. 7

In re Sprint Corp. Securities Litigation,
   164 F. Supp. 2d 1240 (D. Kan. 2001) ............................................................................ 7

Lax v. First Merchants Acceptance Corp.,
   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ........................................... 3

Oxford Health Plans, Inc. Securities Litigation,
   182 F.R.D. 42 (S.D.N.Y. 1998) ..................................................................................... 7

Priest v. Zayre Corp.,
   118 F.R.D. 552 (D. Mass. 1988) .................................................................................... 7

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A)(1) ................................................................................................ 3, 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(1)(cc) ......................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................ 1, 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ......................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................................... 9

**OTHER SOURCES**

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ...................... 5

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................................... 6, 7, 8

INTRODUCTION

Pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, LBBW Asset Management Investmentgesellschaft mbH ("LBBW") and SGSS Deutschland Kapitalanlagegesellschaft mbH ("SGSS") respectfully move this Court for an order appointing LBBW and SGSS as Lead Plaintiffs on behalf of all persons or entities[1] who either (1) were shareholders of common stock of Avon Products, Inc. ("Avon" or the "Company") as of the close of business on March 17, 2011, March 17, 2010, March 18, 2009, March 14, 2008, or March 15, 2007 and therefore eligible to vote proxies, or (2) purchased or otherwise acquired shares of Avon's common stock from July 31, 2006 through and including May 24, 2011 (the "Class Period"), and for approval and appointment of their selection of Motley Rice LLC ("Motley Rice") as Lead Counsel.

For the reasons set forth below, LBBW and SGSS believe they are the "most adequate plaintiff[s]" by virtue of their having the largest financial interest in the relief sought by the Class and satisfying the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Specifically, as set forth in their duly executed Certifications and accompanying loss charts, LBBW and SGSS incurred losses of $1,130,880.14 in connection with their purchases of Avon common stock on the New York Stock Exchange during the Class Period.[2]

---

[1] The "Class" excludes the Defendants, the Company's officers and directors, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any other entity in which any of the Defendants has a controlling interest or of which the Company is a parent or subsidiary.

[2] LBBW and SGSS's combined loss is $1,130,880.14 when calculated under either a "first in, first out" (FIFO) or a "last in, first out" (LIFO) method of accounting.  Copies of the Certifications executed on behalf of LBBW and SGSS are attached as Exhibit 1 to the Declaration of William S. Norton in Support of the Motion of LBBW and SGSS for

Furthermore, LBBW and SGSS are sophisticated institutional investors that are committed to working together in this action to pursue vigorously the claims in the best interest of the Class.[3]  LBBW and SGSS fully understand their duties and responsibilities to the Class, and have already established procedures to coordinate their efforts during the course of the litigation.

## FACTUAL BACKGROUND[4]

Avon is a leading global beauty company, with over $10 billion in annual revenue.  As the world's largest direct seller, Avon markets to women in more than 100 countries through approximately 6.5 million active independent Avon Sales Representatives.  Avon's growth in recent years has been fueled by overseas sales, particularly in emerging markets.  Avon is headquartered in New York City and incorporated in New York.

During the Class Period, Defendants falsely assured investors that the Company had effective internal controls and accounting systems, as required by the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1, et seq.  Avon disclosed, in October 2008, that it had begun an investigation into possible FCPA violations in China in June 2008.  Unbeknownst to investors, however, the Company had an illegal practice of paying bribes in violation of the FCPA, extending as far back as 2004 and which continued even after its October 2008 disclosure, until as recently as last year.  Despite its certifications of the effectiveness of its internal controls, Avon's internal controls were severely deficient, allowing the Company to

---

Appointment as Lead Plaintiffs and Approval of Their Selection of Counsel (the "Norton Decl.").  The accompanying loss charts are attached as Exhibit 2 to the Norton Decl.

[3] See Norton Decl. ¶ 6.

[4] This factual summary is based on the Complaint in City of Brockton Retirement System v. Avon Products, Inc., No. 1:11-cv-04665-PGG (Docket No. 1).

engage in millions of dollars of improper payments in over a dozen countries throughout the Class Period.

Since Avon's initial disclosure of its FCPA probe in October 2008, four executives have been suspended and then fired by Avon, and the Wall Street Journal has reported, and Avon has confirmed, that potential FCPA violations appear to exist in numerous other markets in which the Company operates. After the market closed on April 12, 2010, the market learned that Avon had suspended employees and expanded the scope of its internal FCPA investigation. In reaction to this news, Avon's stock price plummeted 8% the next day. As a result of Defendants' materially misleading statements and omissions, Plaintiff and other members of the Class have suffered significant damages.

## PROCEDURAL BACKGROUND

The PSLRA requires the counsel who files the first complaint to issue a notice to investors in a widely circulated national business-oriented publication within twenty days of the date the complaint is filed, advising class members of the pendency of the lawsuit and the nature of the allegations, their right to seek appointment as lead plaintiff within sixty days of the publication of the notice, and the purported class period. See 15 U.S.C. § 78u-4(a)(3)(A)(1). The action against Avon was filed on July 6, 2011. On the following day, counsel filing the complaint issued the required Notice on Business Wire.[5]

---

[5] Business Wire consistently has been recognized as a suitable vehicle for meeting the PSLRA's statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." See, e.g., Greebel v. FTP Software, Inc., 939 F. Supp. 57, 62-64 (D. Mass. 1996); Lax v. First Merchants Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *1 (N.D. Ill. Aug. 6, 1997); see also Bassin v. deCODE Genetics, Inc., 230 F.R.D. 313, 313 (S.D.N.Y. 2005) (stating that "[n]otice was published that same day in the Business Wire, a national, business oriented newswire service, as required by 15 U.S.C. §§ 78u-4(a)(3)(A)(i)"). A copy of the Notice is attached as Exhibit 3 to the Norton Declaration.

3

The PSLRA requires putative class members to move for appointment as lead plaintiff within 60 days of the date the Notice was issued. See 15 U.S.C. § 78u-4(a)(3)(A)(1). LBBW and SGSS have satisfied this requirement by filing their motion within the sixty-day period. Accordingly, the procedural mandates of the PSLRA have been satisfied.

## ARGUMENT

I.  LBBW AND SGSS SHOULD BE APPOINTED LEAD PLAINTIFFS

    A.    The Legal Requirements Under The PSLRA

The PSLRA provides a rebuttable presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (1997); see generally Bassin, 230 F.R.D. at 313.

    B.    LBBW And SGSS Satisfy The Lead Plaintiff Requirements Of The Exchange Act

        1.    LBBW and SGSS Have Complied with the Exchange Act and Should Be Appointed Lead Plaintiffs

The 60-day time period in which class members may move to be appointed lead plaintiff under 15 U.S.C. § 78u-4(a)(3)(A)-(b) expires on Tuesday, September 6, 2011. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, LBBW and SGSS timely move this Court to be appointed Lead Plaintiffs on behalf of all members of the Class.

LBBW and SGSS have signed and filed sworn certifications pursuant to the PSLRA. See Norton Decl. Ex. 1. In addition, LBBW and SGSS have selected and retained competent counsel

4

to represent it and the class.  <u>See infra</u> Part II.  Therefore, LBBW and SGSS have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiffs and selection of Lead Counsel considered and, for the reasons set forth herein, approved by the Court.

    2. LBBW and SGSS Are Precisely the Type of Lead Plaintiffs Congress Envisioned When It Passed the PSLRA

LBBW and SGSS are both large institutional investors.  The Congressional objective in enacting the lead plaintiff provisions was to encourage large institutional investors to play a more prominent role in securities class actions.  <u>See</u> H.R. Conf. Rep. No. 104-369, at 34 (1995), <u>reprinted in</u> 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); <u>see also</u> <u>Glauser v. EVCI Ctr. Colls. Holding Corp.</u>, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (citation omitted).

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to manage effectively complex securities litigation.  LBBW and SGSS are precisely the type of lead plaintiffs Congress envisioned when it passed the PSLRA.  <u>See</u> H.R. Conf. Rep. No. 104-369, at 34 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

LBBW is a sophisticated institutional investor that is familiar with the provisions governing the appointment of lead plaintiffs in PSLRA actions.  It manages assets of over €374

billion (as of 31 December 2010), and has approximately 13,000 employees, making it one of Germany's largest banks. Likewise, SGSS is a large, institutional investor. SGSS, headquartered in Unterföhring, Germany, is an investment management and fund administration company that had approximately $70 billion of assets under administration as of as of March 2011.

### 3. LBBW and SGSS Have the Requisite Financial Interest in the Relief Sought by the Class

As shown in their Certifications, LBBW and SGSS incurred losses of $1,130,880.14 from their purchases of Avon common stock during the Class Period. See Norton Decl. Exs. 1 & 2. Upon information and belief, LBBW and SGSS have the largest financial interest in the relief sought by the Class of any Class member who has appeared, and are presumptively the most adequate plaintiffs to serve as Lead Plaintiffs.

### 4. LBBW and SGSS Otherwise Satisfy the Requirements of Rule 23

The PSLRA requires that a lead plaintiff, in addition to having the largest financial interest, must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(1)(cc).

Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. See Glauser, 236 F.R.D. at 188 ("Typicality and adequacy of representation, however, 'are the only provisions relevant to a determination of lead plaintiff under the PSLRA.'") (quoting Oxford Health Plans,

6

Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)).  Also, at the lead plaintiff stage, the moving party need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.  Id.

The typicality requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality exists if the "claims of the Lead Plaintiff arise from the same event or course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct."  Glauser, 236 F.R.D. at 188-89 (citing Dietrich v. Bauer, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)); see also In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992).  Also, a difference in the factual situations of class members alone does not defeat typicality under Rule 23(a)(3).  See Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988).  Thus, courts have repeatedly held that typicality is satisfied in securities class actions when the class representatives, like all other class members, purchased the subject stock during the relevant time period at prices that they allege were artificially inflated by false and misleading statements by defendants and allegedly suffered damages.  See, e.g., Glauser, 236 F.R.D. at 189; In re Sprint Corp. Sec. Litig., 164 F. Supp. 2d 1240, 1243-44 (D. Kan. 2001); Chisholm v. Transouth Fin. Corp., 184 F.R.D. 556, 563 (E.D. Va. 1999).

LBBW and SGSS's claims are typical of those of the putative class.  Both purchased Avon common stock during the Class Period at prices artificially inflated and distorted by Defendants' misrepresentations and omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when it is established that a representative party "will fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). This requirement is met when the proposed Lead Plaintiff "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." Glauser, 236 F.R.D. at 189.

LBBW and SGSS are adequate representatives of the class. Their interests are clearly aligned with the interests of the class members because they, like other class members, paid artificially inflated prices due to Defendants' materially false and misleading statements. There is no antagonism between their interests and those of the putative class. Finally, both LBBW and SGSS have taken significant steps demonstrating that they will protect the interests of the class: (1) both have executed sworn certifications detailing their Class Period transactions and expressing their willingness to serve as Lead Plaintiff; (2) they timely moved this Court for appointment as Lead Plaintiff; and (3) they have retained competent and experienced counsel to prosecute these claims.

On September, 6, 2011, representatives of LBBW and SGSS convened a conference call to discuss the litigation and the possibility of working together to prosecute jointly the claims on behalf of the Class. See Norton Decl. ¶ 6. They each recognized that they had suffered significant losses as a result of the fraud at Avon and shared common goals in making sure that the action would be vigorously prosecuted against all culpable parties. See id. They also discussed their shared views concerning litigation strategy and procedures for directing and monitoring counsel to make sure that the action would be litigated efficiently and in a cost-effective manner. See id. Based on their substantial losses and their shared interest in ensuring

8

that the litigation is actively monitored and prosecuted in the best interests of the Class, LBBW and SGSS decided to join together to seek appointment as Lead Plaintiffs.

LBBW and SGSS are fully informed of and appreciate the duties in serving as fiduciaries to all members of the Class, and are committed to fulfilling those responsibilities.  See Norton Decl. Ex. 1.  Also, both LBBW and SGSS have ample resources, including dedicated staff with the legal, financial, and organizational expertise to oversee effectively this proceeding and direct outside counsel.  The Class will benefit from the sophistication, expertise, and resources that LBBW and SGSS bring to this litigation.

In addition, as shown below, LBBW and SGSS's proposed counsel are highly qualified, experienced and able to conduct this complex litigation vigorously and in a professional manner.  Thus, the adequacy requirements of Rule 23 have been satisfied.

## II.     THE COURT SHOULD APPROVE LBBW'S AND SGSS'S CHOICE OF COUNSEL

The PSLRA provides that the lead plaintiff shall, subject to court approval, select and retain lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v); Glauser, 236 F.R.D. at 190.  A court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  LBBW and SGSS have selected the law firm of Motley Rice as proposed Lead Counsel.  Motley Rice's members have substantial experience in the prosecution of shareholder and securities class actions.[6]  (The firm resume of Motley Rice is attached as Exhibit 4 to the Norton Decl.)  Therefore, the Court should approve LBBW and SGSS's selection of counsel.

---

[6] As the district court noted when appointing Motley Rice Lead Counsel in Marsden v. Select Medical Corp., No. 04-4020 (E.D. Pa. Order entered Oct. 5, 2006), "Motley Rice LLC possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class."

9

CONCLUSION

For all of the above reasons, LBBW and SGSS respectfully request that the Court:

(1) appoint LBBW and SGSS as Lead Plaintiffs and (2) approve their selection of Motley Rice as Lead Counsel.

Dated: September 6, 2011

                                               MOTLEY RICE LLC

                                               */s/ William S. Norton*
                                               Joseph F. Rice
                                               jrice@motleyrice.com
                                               William S. Norton (WN-4551)
                                               bnorton@motleyrice.com
                                               J. Brandon Walker (JW-0506)
                                               bwalker@motleyrice.com
                                               28 Bridgeside Boulevard
                                               Mount Pleasant, SC 29464
                                               Tel: (843) 216-9000
                                               Fax: (843) 216-9450

                                               MOTLEY RICE LLC
                                               William H. Narwold (WN-1713)
                                               bnarwold@motleyrice.com
                                               MOTLEY RICE LLC
                                               One Corporate Center
                                               20 Church Street, 17th Floor
                                               Hartford, CT 06103
                                               Tel: (860) 882-1676
                                               Fax: (860) 882-1682

                                               [Proposed] Lead Counsel