UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF BROCKTON RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>v.<br><br>AVON PRODUCTS, INC.; ANDREA JUNG; CHARLES W. CRAMB; STEPHEN IBBOTSON; SIMON N.R. HARFORD; RICHARD S. FOGGIO; W. DON CORNWELL; EDWARD T. FOGGARTY; FRED HASSAN; MARIA ELENA LAGOMASINO; ANN S. MOORE; PAUL S. PRESSLER; GARY M. RODKIN; PAULA STERN; LAWRENCE A. WEINBACH; and V. ANN HAILEY,<br><br>   Defendants. | Civil Action No. 11-civ-4665-PGG |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE CITY OF BROCKTON RETIREMENT SYSTEM AND THE LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF LEAD AND <u>LIAISON COUNSEL</u>**

**TABLE OF CONTENTS**

**PAGE**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 2

III. ARGUMENT ................................................................................................................. 4

    A. The Court Should Appoint The Pension Funds As Lead Plaintiffs ......................... 4

        1. The Pension Funds Have Met the Procedural Requirements
           of the PSLRA ........................................................................................... 4

        2. The Pension Funds Have the Largest Known Financial Interest
           in the Litigation ....................................................................................... 5

        3. The Pension Funds Are Sophisticated Institutional Investors That Meet the
           Requirements of Rule 23 ......................................................................... 6

           a) The Pension Funds' Claims Are Typical of Other Class Members .. 6

           b) The Pension Funds Will Adequately and Fairly Represent the
              Interests of the Class ....................................................................... 7

IV. THE COURT SHOULD APPROVE THE PENSION FUNDS' SELECTION OF LEAD
     AND LIAISON COUNSEL ......................................................................................... 9

V. CONCLUSION ............................................................................................................ 10

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184 (S.D.N.Y. 2006 ...................... 7

*Hevesi v. Citigroup, Inc.,* 366 F.3d 70 (2d Cir. 2004) .................................................................... 8

*In re Bank of America Corp. Sec., Deriv. & ERISA Litig.,* 258 F.R.D. 260 (S.D.N.Y. 2009) ....... 6

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ................................................................ 9

*In re Initial Pub.Offering Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002) ......................................... 6

*In re McDermott Int'l Sec. Litig.*, 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) ............................... 6

*Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 CV. 3516 (SWK)  2008 U.S. Dist. LEXIS 49169 (S.D.N.Y. Jun. 26, 2008) ................................................................................... 6

*Olsen v. New York Cmty. Bancorp*, 233 F.R.D. 101 (E.D.N.Y. 2005) ........................................... 7

*Zucker v. Zoran Corp.*, 2006 U.S. Dist. LEXIS 93469 (N.D. Cal. Dec. 11, 2006) ........................ 6

**Statutes**

15 U.S.C. § 77z-1(a)(3)(B)(i) ......................................................................................................... 5

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................................................................................ 4

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .......................................................................................... 1, 4, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................................................. 4

15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................................................................................ 9

Rule 23 of the Federal Rule of Civil Procedure ................................................................. 1, 4, 5, 6

SEC Rule 10b-5 .......................................................................................................................... 3, 7

SEC Rule 14a-9 ............................................................................................................................. 3, 7

Section 14(a) ................................................................................................................................ 5, 6

Securities Exchange Act of 10(b) ............................................................................................... 3, 7

Securities Exchange Act of 14(a) ........................................................................................... 3, 5, 7

Securities Exchange Act of 20(a) ............................................................................................... 3, 7

**Other Authorities**

H.R. Conf. Rep. No. 104-369, 104th Con. 1st Sess. (1995) ............................................................ 8

Statement of Managers – The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700, H.R. Conf. Rpt. No. 104-369, at 35, 141 Cong. 1st Sess. (Nov. 28, 1995) ................................................................................................................................. 9

The City of Brockton Retirement System ("Brockton") and the Louisiana Municipal Police Employees' Retirement System ("MPERS" and, together with Brockton, "the Pension Funds") respectfully submit this memorandum of law in support of their motion (i) for appointment as lead plaintiffs pursuant to the Securities Exchange Act of 1934 (the "Exchange Act")(15 U.S.C. § 78u-4(a)(3)(B)), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and (ii) for approval of their selection of Berman DeValerio as lead counsel and of Cohen Milstein Sellers and Toll PLLC ("Cohen Milstein") as liaison counsel for the proposed class.

## I.  PRELIMINARY STATEMENT

This case involves allegations of securities fraud against Avon Products, Inc. ("Avon") and certain of its officers and directors (collectively, with Avon, "defendants"). During the class period, as defined below, defendants disseminated false and misleading statements about the effectiveness of Avon's internal controls and accounting systems. At the same time, the defendants omitted material information about violations of the Foreign Corrupt Practices Act ("FCPA"), including the payment of bribes to foreign government officials, by Avon in as many as a dozen countries. Defendants' false statements and omissions artificially inflated the price of Avon stock and substantially damaged the proposed class when their shares fell in value upon revelation of the truth.

Under the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as lead plaintiff and oversee the conduct of this securities litigation on behalf of the proposed class of Avon investors. Accordingly, the Court must determine which lead plaintiff movant has complied with the procedural requirements of the PSLRA, has the "largest financial interest" in the relief sought by the class and has also made a prima facie showing under Federal Rule of Civil Procedure ("Rule") 23 that its claims are typical of other class members and that it will adequately represent the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Movants, the Pension Funds, have complied with all applicable provisions of the PSLRA in bringing this motion. They also have the largest financial interest in the relief sought here.

1

The Pension Funds purchased 80,430 shares of Avon common stock during the class period, expending over $2.78 million and suffering as much as $243,039.00 in "FIFO" losses.[1] The Pensions Funds' claims are typical of the other class members and, through their selection of experienced lead and liaison counsel, the Pension Funds will adequately represent the class and ensure vigorous prosecution of the claims on its behalf.

## II.     STATEMENT OF FACTS

Avon is a leading global beauty company based and incorporated in New York, NY. Avon has over $10 billion in annual revenue, generated by the sale of beauty products through a network of over 6.5 million independent sales representatives worldwide. Much of Avon's revenue growth in recent years has come from overseas sales, particularly in emerging markets, such as China, Japan, Latin America and India.

Plaintiffs allege that during the class period defined in the operative complaint as July 31, 2006 through May 24, 2011, Avon made a number of false and misleading statements about its internal controls and accounting systems. Specifically, during the class period, Avon stated in its SEC filings, including proxy statements, that it had implemented and maintained effective internal controls and accounting systems in compliance with the FCPA.

In fact, during the class period, Avon allegedly engaged in a systematic course of conduct that involved violating the FCPA by paying bribes and other improper payments to foreign officials in over a dozen countries around the world. Avon first disclosed an internal investigation into FCPA violations by its employees in China, in October 2008. In April 2010, Avon revealed that it had suspended, then terminated, four employees for FCPA violations and that its internal probe had expanded to countries beyond China.

The full extent of Avon's FCPA violations, however, did not become known to the market until at least May 2011. At that time, the Wall Street Journal reported that, as early as

---

[1] "FIFO" losses are calculated by offsetting the movant's sales of stock against its inventory of stock, starting with the earliest sale and moving chronologically forward (hence the acronym FIFO, for 'First In, First Out').

2004 and as late as 2010, Avon employees had paid millions of dollars in bribes to officials as far afield as Brazil, Mexico, Argentina, Japan and India. Moreover, on May 24, 2011, the Wall Street Journal and the Independent newspaper of London reported that the federal government had commenced a criminal investigation into Avon for FCPA violations.

Upon each of these revelations of FCPA violations by Avon, the company's share price fell. In April 2010, Avon's investors lost over $1.1 billion in equity upon revelation of the suspension of the four Avon executives. On May 4 and 5, 2011, after the first Wall Street Journal article appeared, Avon's shares declined by $2.20 a share, over 7%. Again, on May 24 and 25, 2011, Avon's share price fell by $0.83 per share, 3%.

On July 6, 2011, Brockton filed the first (and, to date, only) complaint in this action. That complaint, filed in this Court, asserted claims on behalf of (1) all Avon shareholders that held stock as of the close of business on March 17, 2011, March 17, 2010, March 18, 2009, March 14, 2008 or March 15, 2007 and were, therefore, eligible to vote proxies and (2) all those investors who purchased or otherwise acquired shares of Avon's common stock between July 31, 2006 and May 24, 2011, inclusive.

The complaint alleges violations of Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rules 10b-5 and 14a-9. The complaint names as defendants Avon itself and fifteen senior officers and directors that made and/or signed the allegedly false and misleading proxy statements and other SEC filings.

On July 7, 2011, Brockton, through its counsel, published a notice of the pendency of this action via the wire service, BusinessWire.

### III.     ARGUMENT

#### A.     The Court Should Appoint The Pension Funds As Lead Plaintiffs

The PSLRA set forth a three step procedure for the appointment of lead plaintiffs in class actions arising under the Exchange Act. 15 U.S.C. § 78u-4(a)(3)(A)(i). First, within twenty days of filing a class action, the filing plaintiff must publish a notice advising members of the proposed class of the pendency of the action, the claims asserted, the purported class period and their right to move for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i).

Second, after consideration of all motions for appointment as lead plaintiff filed in response to the notice, the court appoints "the presumptively most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "[P]resumptively most adequate plaintiff" means the person, or group of persons, that (1) either filed the complaint or moved in response to the notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id*.

Third, the court must then give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements. Only proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class" can rebut the presumption in favor of appointing the presumptively most adequate plaintiff as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

##### 1.     The Pension Funds Have Met the Procedural Requirements of the PSLRA

As to the first step of the PSLRA procedure, Brockton is the first-filing plaintiff in this case. On July 6, 2011, Brockton filed the first (and only) complaint in this action. *See* Docket Number 1. On July 7, 2011, Brockton, through its counsel, published a notice on BusinessWire. *See* Declaration of Jeffrey C. Block In Support of the Motion of the City of Brockton and the Louisiana Municipal Police Employees' Retirement System for Appointment as Lead Plaintiffs

4

and for Approval of Lead and Liaison Counsel ("Block Declaration" or "Block Decl."), filed concurrently herewith, Exhibit ("Ex.") 1.

In accordance with the PSLRA, the notice announced that a securities class action had been filed against the defendants and advised Avon investors of the sixty day timeframe within which they could move for appointment as lead plaintiff.  The Pension Funds have satisfied the requirements of the PSLRA by filing this motion for appointment as lead plaintiffs within this timeframe.

### 2. The Pension Funds Have the Largest Known Financial Interest in the Litigation

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest" in the relief sought by the class, has made a *prima facie* showing that it is an adequate and typical class representative under Rule 23 of the Federal Rules of Civil Procedure, and, as discussed above, has either filed a complaint or a motion seeking lead plaintiff status.   15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

To the best of their knowledge, the Pension Funds believe they have the largest financial interest in this litigation by any qualified movant seeking appointment as lead plaintiff. Specifically, the Pension Funds purchased 80,430 shares of Avon stock during the class period, at a cost of $2,780,836.00 and collectively lost $243,039.00.[2]

The Pension Funds also satisfy the largest financial interest requirement as to the claims brought under Section 14(a) of the Exchange Act.  Losses under Section 14(a) are directly related to the number of shares held on a specific date.  *See In re Bank of America Corp. Sec.,*

---

[2] The PSLRA Certifications of Brockton and MPERS are attached as Exhibits 2 and 3 to the Block Declaration.  These Certifications set forth the transactions in Avon securities during the class period.  Exhibit 4 to the Block Declaration sets forth calculations of the Pension Funds' losses related to Avon securities.

5

*Deriv. & ERISA Litig.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (")("The number of shares held is another factor that may be considered in gauging the movant's financial interest in the Section 14(a) claims.") (*citing Zucker v. Zoran Corp.*, No. 06 Civ. 4843 (WHA), 2006 U.S. Dist. LEXIS 93469, at *8-9 (N.D. Cal. Dec. 11, 2006)). On the dates of the allegedly false proxy statements at issue in this action, the Pension Funds had the following holdings of Avon stock:

| Proxy Statement Date | Pension Funds' Holdings (Shares of Common Stock)[3] |
|---|---|
| March 15, 2007 | 27,000 |
| March 14, 2008 | 15,590 |
| March 18, 2009 | 8,400 |
| March 17, 2010 | 17,000 |
| March 17, 2011 | 5,000 |

Accordingly, the Pension Funds have the largest financial interest in the relief sought of any qualified movant seeking appointment as lead plaintiff for the class.

### 3. The Pension Funds Are Sophisticated Institutional Investors That Meet the Requirements of Rule 23

The third step of the PSLRA's lead plaintiff analysis requires that the movant with the largest financial interest "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). A preliminary showing that a movant satisfies the typicality and adequacy requirements of Rule 23 will suffice at this stage. *In re McDermott Int'l Sec. Litig.*, 08 Civ. 9943 (DC), 2009 U.S. Dist. LEXIS 21539, at *6(S.D.N.Y. Mar. 6, 2009) (citing *In re Initial Pub.Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (citations omitted)). The Pension Funds satisfy both requirements.

#### a) The Pension Funds' Claims Are Typical of Other Class Members

A movant's claims satisfy typicality where "the claims arise from the same conduct from which the other class members' claims and injuries arise." *Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 CV. 3516 (SWK) 2008 U.S. Dist. LEXIS 49169, at *10 (S.D.N.Y. Jun. 26, 2008) (citing *IPO*, 214 F.R.D. at 121).).

---

[3] *See* Block Decl. Ex. 4.

6

Here, the Pension Funds seek to hold defendants liable for their violations of federal securities law, namely Sections 10(b), 14(a) and 20(a) of the Exchange Act and SEC Rules 10b-5 and 14a-9.  Specifically, the Pension Funds, like all other members of the proposed class, purchased Avon securities during the proposed class period at artificially inflated prices because of defendants' alleged false statements about their compliance with the FCPA.  When the truth about defendants' FCPA violations emerged, the Pensions Funds' and class members' securities lost significant value, causing them damage.  *See, e.g., Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (typicality is)(typicality satisfied in lead plaintiff motion where movant "like all class members, (1) purchased or acquired [the Company's] securities during the class period, (2) at prices allegedly inflated by Defendants' false and misleading statements and/or omissions, and (3) suffered damages thereby.").

The Pensions Funds' claims are typical of those of the other proposed class members.  The typicality requirement is, therefore, met.

### b) The Pension Funds Will Adequately and Fairly Represent the Interests of the Class

The Pension Funds also satisfy the adequacy requirement of Rule 23.  The adequacy requirement is met where "class counsel is qualified, experienced, and generally able to conduct the litigation[.]"  *Olsen v. New York Cmty. Bancorp*, 233 F.R.D. 101, 109 (E.D.N.Y. 2005) (citations ommitted ).  Also, adequacy requires "the class members' interests are not antagonistic to one another" and that "the lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Id.*  The Pension Funds and their selected counsel satisfy these requirements.

The Pension Funds have selected Berman DeValerio as counsel, a nationally-known class action law firm with an extensive track record in prosecuting securities class action lawsuits.  *See* Block Decl. Ex. 5.  Berman DeValerio has successfully litigated numerous securities fraud class actions and has obtained excellent recoveries on behalf of investors.  Counsel's skill and experience will ensure the effective prosecution of this case.

7

No facts suggest any conflicts of interest will arise between the Pension Funds and other class members. The losses suffered by the Pension Funds will ensure vigorous advocacy. *See* Block Decl. Ex. 2 and 3. Representatives of the Pension Funds have submitted Certifications affirming their understanding of the fiduciary duties owed to the class and their commitment to ensuring the vigorous prosecution the case. *Id*. Moreover, the Pension Funds are precisely the type of sophisticated institutional investors preferred as lead plaintiffs by the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Con. 1st Sess. (1995) ("(1995)("increasing the role of institutional investors will ultimately benefit the class and assist the courts by improving the quality of representation in securities class actions."); *see also Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 82 n. 13 (2d Cir. 2004) (the main purpose of the PSLRA's lead plaintiff provisions is to "empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole.").

The Public Pension Funds are exactly the types of institutional investors Congress envisioned would lead securities class actions when it passed the PSLRA. They are both sophisticated institutional investors. Brockton manages approximately $339.5 million in assets for approximately 3,000 active and retired members. MPERS manages approximately $1.1 billion in net assets and manages the pension and benefit funds of approximately 10,225 active and retiree members. Moreover, they have both been appointed lead or co-lead plaintiff in other securities class actions and are prepared to work together to prosecute this action. Thus, Brockton and MPERS have the qualifications to assume to role of lead plaintiff.

The Pension Funds have satisfied all of the procedural requirements of the PSLRA. They have demonstrated the largest financial interest in the relief sought by the class. They meet the typicality and adequacy requirements of Rule 23. Consequently, the Court should appoint the Pension Funds as lead plaintiffs in this case.

## IV. THE COURT SHOULD APPROVE THE PENSION FUNDS' SELECTION OF LEAD AND LIAISON COUNSEL

The PSLRA authorizes lead plaintiffs to select lead counsel, subject to approval by the court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). A court should not disturb the lead plaintiff's choice of counsel unless "necessary to protect the interests of the plaintiffs' class." Statement of Managers – The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700, H.R. Conf. Rpt. No. 104-369, at 35, 141 Cong. 1st Sess. (Nov. 28, 1995).

In this action, the Pension Funds have selected Berman DeValerio to serve as lead counsel for the class. Lead counsel shall take responsibility for the prosecution of this litigation. With the assistance of liaison counsel, lead counsel will take responsibility for communications with the court and defense counsel, including the filing of all pleadings on behalf of lead plaintiffs and the class. Lead counsel will initiate and oversee discovery on behalf of lead plaintiffs and the class and, if necessary, will represent the class at trial.

Berman DeValerio is highly experienced in the area of securities class action litigation and has successfully prosecuted numerous securities fraud claims, obtaining large recoveries on behalf of defrauded investors. *See* Block Decl. Ex. 5. The Pension Funds also request appointment of selected Cohen Milstein to serve as liaison counsel for the class. Cohen Milstein also has a proven track record of successfully prosecuting securities class actions. *See* Block Decl. Ex. 6.

The Court may rest assured that, by appointing the Pension Funds' choice of counsel, the class will receive the highest caliber of representation and that the case will be prosecuted in an efficient and effective manner.

## V. CONCLUSION

The Pension Funds, having met all required showings under the PSLRA, respectfully request the Court enter an order (i) appointing the Pension Funds as lead plaintiffs of the proposed class in the above-captioned case; and (ii) approve their selection of Berman DeValerio as lead counsel and Cohen Milstein as liaison counsel.

Date: September 6, 2011                    Respectfully submitted,


**By**: /s/ Kenneth M. Rehns
    Christopher Lometti (CL-9124)
    Daniel B. Rehns (DR-5506)
    Kenneth M. Rehns (KR-9822)
**COHEN MILSTEIN SELLERS**
  **& TOLL PLLC**
88 Pine Street
New York, NY 10005
(212) 838-7797
(212) 838-7745 (fax)

**Proposed Liaison Counsel**

Jeffrey C. Block (JCB-0387)
**BERMAN DEVALERIO**
One Liberty Square
Boston, MA 02109
(617) 542-8300
(617) 542-1194 (fax)

**Proposed Lead Counsel**

10

## **CERTIFICATE OF SERVICE**

    I, Kenneth M. Rehns, hereby certify that, on September 6, 2011, I caused the foregoing document to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service. Counsels of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

                                                                   /s/ Kenneth M. Rehns  
                                                                        Kenneth M. Rehns