UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------

CITY OF BROCKTON RETIREMENT
SYSTEM, Individually and on Behalf of all
Others Similarly Situated,

                 Plaintiffs,

        -vs-

AVON PRODUCTS, INC., ANDREA
JUNG, and CHARLES W. CRAMB,

                Defendants.

---------------------------------------

Civil Action No. 11 Civ. 4665 (PGG)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR (i) PRELIMINARY APPROVAL OF SETTLEMENT,
(ii) CERTIFICATION OF A SETTLEMENT CLASS, AND (iii) APPROVAL OF NOTICE**

MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450

*Lead Counsel and Counsel for Lead Plaintiffs
LBBW Asset Management Investmentgesellschaft mbH
and SGSS Deutschland Kapitalanlagegesellschaft mbH*

WOLF POPPER LLP
845 Third Avenue
New York, NY  10022
Telephone:  (212) 759-4600
Facsimile:  (212) 486-2093

*Counsel for Named Plaintiff Metropolitan
Water Reclamation District Retirement
Fund*

BERMAN DEVALERIO
One Liberty Square
Boston, MA  02109
Telephone:  (617) 542-8300
Facsimile:  (617) 542-1194

*Counsel for Named Plaintiffs City of
Brockton Retirement System and the
Louisiana Municipal Police Employees'
Retirement System*

DATED:  August 18, 2015

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................1

SUMMARY OF THE ACTION ...................................................................................2

ARGUMENT ................................................................................................................5

I.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .........................7

    A.   The Proposed Settlement Is The Result Of Well-Grounded, Good Faith, Arm's-Length Negotiations ...................................................................7

    B.   The Proposed Settlement Falls Within The Range Of Reasonableness And Merits Issuance Of Notice And A Hearing On Final Approval.............................9

II.  CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE .................12

    A.   The Class Satisfies The Requirements Of Rule 23(a) .........................................14

        1.   The Class Members Are Too Numerous To Be Joined ...........................14

        2.   There Are Common Questions of Law and Fact ......................................15

        3.   Plaintiffs' Claims Are Typical of Those of the Class ..............................16

        4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class .......................................................................................17

    B.   The Class Satisfies The Requirements Of Rule 23(b)(3).....................................18

        1.   Common Legal and Factual Questions Predominate................................19

        2.   A Class Action Is Superior to Other Methods of Adjudication ................20

III. NOTICE TO THE CLASS SHOULD BE APPROVED.................................................21

CONCLUSION............................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................................. 14, 19

*Aramburu v. Healthcare Financial Services*,
   No. 02 CV 6535(ARR), 2005 WL 990995 (E.D.N.Y. Apr. 14, 2005) .................................... 13

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................................ 6

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco
   Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ............................................................................................ 15, 16

*Consolidated Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ...................................................................................................... 15

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ........................................................................................................ 7

*DeLeon v. Wells Fargo Bank, N.A.*,
   No. 12 Civ. 4494(RA), 2015 WL 821751 (S.D.N.Y. Jan. 12, 2015) ........................................ 6

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .................................................................................................... 14

*Gatto v. Sentry Services, Inc.*,
   No. 13 Civ. 5721(RMB)(GWG), 2014 WL 7338721 (S.D.N.Y. Dec. 19, 2014).............. 15, 18

*Hicks v. Stanley*,
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2015) ................................ 12

*In re Austrian & German Bank Holocaust Litigation*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................................................................... 7

*In re Bear Stearns Cos. Securities, Derivative, & ERISA Litigation*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................................ 8

*In re Cendant Corp., Derivative Action Litigation*,
   232 F. Supp. 2d 327 (D.N.J. 2002) .......................................................................................... 11

*In re Crocs, Inc. Securities Litigation*,
   No. 07-cv-02351-PAB-KLM, 2014 WL 4651967 (D. Colo. Sept. 18, 2014) ................... 10, 11

*In re Currency Conversion Fee Antitrust Litigation*,
   No. 01 MDL 1409, M-21-95, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)............................. 8

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992) ............................................................................................ 17, 18

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................ 7

*In re Giant Interactive Group, Inc. Securities Litigation*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................... 8, 14

*In re Gilat Satellite Networks, Ltd.*,
  No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................... 9

*In re IMAX Securities Litigation*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................ 6, 14, 19

*In re Initial Public Offering Securities Litigation*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ..................................................................... 6, 7

*In re Marsh & McLennan Cos. Securities Litigation*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................... passim

*In re Monster Worldwide, Inc. Securities Litigation*,
  251 F.R.D. 132 (S.D.N.Y. 2008) ........................................................................ 20

*In re NASDAQ Market-Makers Antitrust Litigation*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ......................................................................... 12

*In re Oxford Health Plans, Inc.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................ 15

*In re PaineWebber Ltd. Partnerships Litigation*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................ 22

*In re Pfizer Inc. Securities Litigation*,
  282 F.R.D. 38 (S.D.N.Y. Mar. 29, 2012) ........................................................... 15, 16

*In re Platinum & Palladium Commodities Litigation*,
  No. 10cv3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................ 6

*In re Polaroid ERISA Litigation*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ......................................................................... 18

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................. 6, 10, 12

*In re Sadia, S.A. Securities Litigation*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ................................................................... 15, 16

*In re Scientific Atlanta, Inc. Securities Litigation*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) ................................................................. 10

*In re SCOR Holding (Switzerland) AG Litigation*,
  537 F. Supp. 2d 556 (S.D.N.Y. 2008) ................................................................. 16

*In re Top Tankers, Inc. Securities Litigation*,
  No. 06 Civ. 13761(CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ................................ 11

*In re Veeco Instruments, Inc. Securities Litigation*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ....................................................................... 19

*Knutson v. Schwan's Home Servce, Inc.*,
  No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064 (S.D. Cal. July 14, 2014) ...................... 22

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ................................................................... 19

*Puglisi v. TD Bank, N.A.*,
  No. 13 Civ. 637(LDW)(GRB), 2015 WL 574280 (S.D.N.Y. Feb. 9, 2015) ............................ 6

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ................................................................. 14, 17

*Robinson v. Metro-North Commuter Railroad Co.*,
  267 F.3d 147 (2d Cir. 2001) ................................................................... 15

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................. 5, 21

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ................................................................. 13, 21

*Zeltser v. Merrill Lynch & Co.*,
  No. 13 Civ. 1531(FM), 2014 WL 2111693 (S.D.N.Y. May 12, 2014) .................................. 21

## <u>STATUTES</u>

15 U.S.C. § 78dd-1 ......................................................................................... 3

## <u>RULES</u>

Fed. R. Civ. P. 23(a) ...................................................................................... 14

Fed. R. Civ. P. 23(a)(1) .................................................................................. 14

Fed. R. Civ. P. 23(a)(2) .................................................................................. 15

Fed. R. Civ. P. 23(a)(3) .................................................................................. 16

Fed. R. Civ. P. 23(a)(4) .................................................................................. 17

Fed. R. Civ. P. 23(b)(3) .............................................................................. 18, 20

## PRELIMINARY STATEMENT

Lead Plaintiffs LBBW Asset Management Investmentgesellschaft mbH ("LBBW") and SGSS Deutschland Kapitalanlagegesellschaft mbH ("SGSS") (collectively, "Lead Plaintiffs") and Named Plaintiffs City of Brockton Retirement System ("City of Brockton"), Metropolitan Water Reclamation District Retirement Fund ("Met Water"), and Louisiana Municipal Police Employees' Retirement System ("LAMPERS") (collectively, "Named Plaintiffs," and, with Lead Plaintiffs, "Plaintiffs"), respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the settlement in this Action (the "Settlement"). The proposed Settlement provides a recovery of $62 million in cash to resolve this securities fraud class action against defendants Avon Products, Inc. ("Avon" or the "Company"), Andrea Jung ("Jung"), and Charles W. Cramb ("Cramb") (collectively, the "Defendants"). The Settlement is contained in a Stipulation and Agreement of Settlement entered into by all parties dated as of July 22, 2015 (the "Stipulation").[1]

After extensive investigation, as well as two arm's-length, in-person mediation conferences facilitated by the Honorable Layn R. Phillips (Ret.) ("Judge Phillips"), an experienced and highly respected mediator and former federal District Court judge, the parties have agreed to the Settlement. The result is a substantial $62 million recovery that will be

---

[1]   Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation, a true and correct copy of which is attached as Exhibit 1 to the Declaration of Gregg S. Levin in Support of Plaintiffs' Unopposed Motion for (i) Preliminary Approval of Settlement, (ii) Certification of a Settlement Class, and (iii) Approval of Notice ("Levin Declaration"). The Stipulation includes the following exhibits:  the Notice of (i) Pendency of Class Action, Certification of Class, and Proposed Settlement; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Exhibit A); the [Proposed] Final Judgment Approving Class Action Settlement (Exhibit B); the [Proposed] Order Preliminarily Approving Settlement, Certifying Settlement Class, and Providing for Notice of Settlement (Exhibit C); the Proof of Claim and Release Form (Exhibit D); and the Summary Notice for publication (Exhibit E).

provided to the Class and avoids the risk that Defendants' pending motion to dismiss would be granted, as well as the uncertainty associated with further dispositive motions and trial and appeal if Defendants' pending motion to dismiss were denied.

Accordingly, Plaintiffs seek entry of an order:  (1) granting preliminary approval of the proposed Settlement; (2) preliminarily certifying a settlement class (the "Class") consisting of all persons and entities who purchased or otherwise acquired any common stock of Avon from July 31, 2006, through and including October 26, 2011 (the "Class Period"), and who were damaged as to any shares purchased or acquired during any portion of the Class Period (subject to certain exclusions contained in the Stipulation); (3) appointing Plaintiffs as class representatives and Lead Counsel as class counsel; (4) approving the form, substance, and requirements of the proposed Notice and Summary Notice and setting a schedule for various deadlines relevant thereto; and (5) scheduling a hearing (the "Settlement Hearing") at which the Court will consider final approval of the Settlement, the Plan of Allocation of the Net Settlement Fund, and Plaintiffs' Counsel's application for attorneys' fees and expenses.  As shown below, the proposed Settlement is an excellent result for the Class; is fair, reasonable, and adequate under the governing standards in this Circuit; and warrants preliminary approval.

## SUMMARY OF THE ACTION

This Action arises out of allegations that, during the Class Period, Defendants violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, by knowingly or recklessly misleading investors regarding the reasons for Avon's success in China and Latin America and the state of the Company's internal controls. More specifically, Plaintiffs allege that Defendants linked the Company's commercial success in those regions to the growth of direct sales, falsely implying that Avon's accomplishments were based entirely on legitimate business activities that did not run afoul of the Foreign Corrupt

Practices Act of 1977 (the "FCPA").[2]  Plaintiffs further alleged that the Defendants also made false and misleading disclosures about Avon's internal controls and the steps they had taken to ensure the integrity of Avon's financial reporting.

On July 6, 2011, City of Brockton filed and served the initial class action complaint. ECF No. 1.  On September 6, 2011, each of (1) Met Water; (2) City of Brockton and LAMPERS; and (3) LBBW and SGSS respectively moved for appointment as lead plaintiff and approval of their respective selections of lead counsel.  ECF Nos. 4, 7, 13.  On September 23, 2011, the competing movants agreed and stipulated to a proposed order that would appoint LBBW and SGSS as Lead Plaintiffs, and Met Water, City of Brockton, and LAMPERS as Named Plaintiffs. ECF No. 21.  On September 29, 2011, the Court granted the movants' stipulation and proposed order.  *See id.*

On March 16, 2012, Plaintiffs filed and served their Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint").  ECF No. 29.  The Amended Complaint asserted claims (i) under Section 10(b) of the Exchange Act and Rule 10b-5 against Avon, Jung, and Cramb, and (ii) under Section 20(a) of the Exchange Act against Jung and Cramb.  The gravamen of the Amended Complaint was that Defendants made, or controlled others who made, materially false and misleading statements about the success of Avon's "direct sales" business in international markets, most notably China and Latin America, and the Company's compliance with both the letter and spirit of the anti-bribery provisions of the FCPA, while concealing Avon executives' widespread bribery of government officials.  The Amended Complaint alleged that these statements and omissions caused the price of Avon common stock

---

[2]      *See* 15 U.S.C. § 78dd-1 *et seq.*

to be artificially inflated throughout the Class Period until the extent of Defendants' misconduct and resulting liability was revealed through a series of partial corrective disclosures.

On June 14, 2012, Defendants moved to dismiss the Amended Complaint, which Plaintiffs opposed.  *See* ECF Nos. 37, 39, 41.  On September 29, 2014, the Court granted Defendants' motion to dismiss in its entirety with leave to amend.  ECF No. 55.

On October 24, 2014, Plaintiffs filed a Second Amended Complaint for Violations of the Federal Securities Laws (the "Second Amended Complaint").  ECF No. 56.  The Second Amended Complaint pleaded the same causes of action against the same defendants as those alleged in the Amended Complaint, but included additional allegations related to the terms of Avon's settlement of civil and criminal charges with the U.S. Securities and Exchange Commission ("SEC") and U.S. Department of Justice ("DOJ").  Pursuant to these settlements, an indirect subsidiary of Avon incorporated in China pleaded guilty to violating the books and records provisions of the FCPA and Avon agreed to put an external compliance monitor in place for a period of eighteen months and to pay a total of $135 million in fines, disgorgement, and pre-judgment interest.

Defendants moved to dismiss the Second Amended Complaint on November 21, 2014, which Plaintiffs opposed and the parties briefed between December 23, 2014 and January 20, 2015.  *See* ECF Nos. 62, 64, 66.[3]  Following that briefing, the Parties agreed to a mediation before Judge Phillips.  The Settlement of the Action was reached following substantial arm's-length negotiations facilitated by Judge Phillips.

---

[3]     The Court has not yet ruled on Defendants' motion to dismiss the Second Amended Complaint.

While the Action is at a relatively early procedural stage, Plaintiffs' Counsel and their investigators have expended hundreds of hours since the Fall of 2011 researching the claims and have drafted two extensive amended complaints and opposed two motions to dismiss. Ultimately, however, Plaintiffs have yet to overcome a motion to dismiss. The Class, therefore, faces the very real prospect that, without the Settlement, they will recover nothing.

In light of the substantial benefits achieved (the payment of $62,000,000 in cash for the benefit of the Class), the cost and risks of continuing the Action against Defendants through the pending motion to dismiss (let alone other potentially dispositive motions and a potential trial and appeals), and the fact that the proposed Settlement is the result of arm's-length negotiations overseen by an experienced mediator, it is respectfully submitted that the Settlement warrants the Court's preliminary approval so that notice can be provided to the Class. It is further submitted that the Court should, for purposes of the Settlement only, certify the Class, appoint Plaintiffs as class representatives, and appoint Lead Counsel as class counsel.

## ARGUMENT

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pre-trial settlement of class action lawsuits. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations and internal quotation marks omitted); *In re IMAX Sec. Litig.*, 283

F.R.D. 178, 188 (S.D.N.Y. 2012) ("[W]e emphasize that . . . there is a 'strong judicial policy in favor of settlements, particularly in the class action context.'").[4]

"Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637(LDW)(GRB), 2015 WL 574280, at *1 (S.D.N.Y. Feb. 9, 2015). At the preliminary approval stage, the "Court's function . . . is 'to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). Preliminary approval of a class action settlement "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (internal quotation marks omitted); *see also DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494(RA), 2015 WL 821751, at *1 (S.D.N.Y. Jan. 12, 2015).

In making this preliminary determination, "'[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *accord In re Platinum & Palladium*, 2014 WL 3500655, at *11; *DeLeon*, 2015 WL 821751, at *1 ("If the proposed settlement appears

---

[4]     Moreover, "courts encourage early settlements of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013).

to fall within the range of possible approval, the court should order that the class members receive notice of the settlement.") (internal quotation marks omitted).

Plaintiffs now request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement.  As summarized below, and as will be detailed further in a subsequent motion for final approval, the proposed Settlement is well "'within the range of possible approval.'"  *In re Initial Pub. Offering*, 243 F.R.D. at 87.

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    The Proposed Settlement Is The Result Of Well-Grounded, Good Faith, Arm's-Length Negotiations

A presumption of fairness applies to a proposed class settlement that is the result of arm's-length negotiations between counsel knowledgeable in complex class litigation.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) ("If the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.").[5]  This is particularly so when those negotiations are facilitated by a mediator.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . . mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

---

[5]    In this context, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) (internal quotation marks omitted).  Here, throughout the Action, Plaintiffs had the benefit of the advice of knowledgeable counsel with extensive experience in shareholder class action litigation and securities fraud cases.  *See infra* Part II.A.4.  During the course of prosecuting the Action, Plaintiffs' Counsel developed a thorough understanding of the merits of the Action.  Plaintiffs' Counsel's belief in the fairness and reasonableness of the Settlement supports the grant of preliminary approval here.

Here, the Settlement is the product of such rigorous arm's-length negotiations facilitated by Judge Phillips, who has assisted in numerous other complex class action mediations. *See In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding settlement fair when parties engaged in "arm's length negotiations . . . mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (settlement entitled to presumption of fairness when it was the product of "arms-length negotiation . . . facilitated by [Judge Phillips,] a respected mediator").

Following two days of mediation before Judge Phillips, the Parties reached an agreement in principle to settle the Action.  Moreover, the Settlement was reached only after completion of Plaintiffs' Counsel's:  (1) factual investigations over three years aided by private investigators; (2) rigorous analysis of Avon's public filings and public statements; (3) review of news articles and analyst reports about Avon; (4) interviews of numerous former Avon employees in connection with the drafting the First Amended Complaint;  (5) exhaustive briefing on Defendants' two motions to dismiss; (6) review and analysis of Avon's settlements with the SEC and DOJ related to allegations of violations of the FCPA; and (7) consultations with an expert on loss causation and damages.  Thus, at the time the agreement to resolve this litigation was reached, Plaintiffs and their counsel had a thorough understanding of the strengths and weaknesses of the parties' respective positions.  *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (granting preliminary approval when "'counsel have demonstrated a thorough understanding of the complexities of the issues and the strengths and weaknesses of their respective claims, defenses and strategies'").

**B.     The Proposed Settlement Falls Within The Range Of Reasonableness And Merits Issuance Of Notice And A Hearing On Final Approval**

The proposed $62 million Settlement is well within the range of reasonableness and is an excellent result given the numerous and substantial risks the Class faced in this Action.  In particular, Plaintiffs have yet to overcome a motion to dismiss.  Even if the Court denied Defendants' pending motion to dismiss the Second Amended Complaint, Defendants have advanced a number of arguments and defenses (which they would raise at summary judgment and trial), including, among others, that:  (1) Defendants' statements made prior to July 6, 2009 were barred by the statute of limitations; (2)  no actionable misstatements and omissions were made; and (3) Plaintiffs would not be able to establish that Defendants acted with scienter.[6]  For example, Defendants would have argued that Plaintiffs are unable to establish scienter because (i) revenue from China only represented a small percentage of Avon's global revenues during the Class Period, and (ii) when Jung was informed about potential FCPA violations in 2008, the Company commenced an internal investigation under the oversight of its Audit Committee, voluntarily self-reported the allegation to the SEC and DOJ, and made a public disclosure of the investigation.

Additionally, Defendants have maintained that potential investment losses suffered by Plaintiffs and the Class were actually caused by external, independent factors, and not by Defendants' alleged conduct.  In particular, Defendants have argued that Avon's share price drops were attributable to market forces and other macroeconomic considerations, including, among others, that (i) the decline in Avon's stock price on October 21, 2008 occurred during the

---

[6]      *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *11 (E.D.N.Y. Sept. 18, 2007) ("Establishing scienter is 'a difficult burden to meet.'").

financial crisis that caused unusually frequent and dramatic moves in the entire stock market,[7] and (ii) the October 27, 2011 stock price decline—the largest decline alleged by Plaintiffs—occurred in response to Avon reporting that it had missed analysts' earnings estimates.

For the above reasons, among others, Plaintiffs faced undeniable challenges in establishing Defendants' liability, as evidenced by the Court's grant of Defendants' motion to dismiss the First Amended Complaint. Against that backdrop, the Settlement represents a highly favorable recovery for the Class. *See, e.g.*, *In re Prudential Sec.*, 163 F.R.D. at 210 ( "Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class. In the circumstances of such as case as this, it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'").

The Settlement also "is in line with the median ratio of settlement size to investor losses." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4651967, at *14 n.20 (D. Colo. Sept. 18, 2014). According to a recent report published by Cornerstone Research, between 2005 and 2013, the median recovery in securities cases with estimated damages of $1 billion to $4.9 billion was 1.1%.[8] In connection with the mediation, Plaintiffs retained a consulting expert to analyze the damages suffered by the Class as a result of the alleged fraud. Following an extensive analysis, Plaintiffs' consulting expert estimated that the Class had sustained damages of approximately $3.3 billion. Measured against that yardstick, the

---

[7] *See, e.g.*, *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1376 (N.D. Ga. 2010) ("[I]n order to defeat summary judgment, plaintiffs in a securities fraud case must present evidence disaggregating the fraud and non-fraud-related causes of the plaintiff's loss.").

[8] *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, Securities Class Action Settlements: 2014 Review and Analysis, at 9 (Cornerstone Research 2015) ("Cornerstone Report"), *available at* https://www.cornerstone.com/GetAttachment/701f936e-ab1d-425b-8304-8a3e063abae8/Securities-Class-Action-Settlements-2014-Review-and-Analysis.pdf (copy attached as Ex. 2 to Levin Decl.).

Settlement, if approved, will compensate Class members for approximately 1.86% of their estimated losses—a substantial recovery in light of the procedural posture of the case and Defendants' countervailing legal arguments.  *See, e.g.*, *In re Crocs*, 2014 WL 4651967, at *14 n.20 (approving settlement recovering "approximately 1.3% of the amount of damages that could be achieved"); *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D.N.J. 2002) (finding settlement "represent[ing] less than two percent" of "maximum possible recovery [of] $3.2 billion" justifiable because "Settling Defendants appear[ed] to have significant defenses that increase[d] the risks of litigation" and, "as the risks of litigation increase, the range of reasonableness correspondingly decreases").

The $62 million Settlement also is substantial when compared to other recent settlements in absolute terms.  Measured against Cornerstone Research's published data, the Settlement is well above the 75% percentile of all Settlements between 2005 and 2014 (which peaked at $36.1 million in 2012) and well above the 90th percentile ($39.9 million) of all settlements in 2014.  *See* Cornerstone Report, at 6.  Moreover, the average settlement in securities fraud cases in 2014 was $17 million, and the median settlement figure during that year was $6 million.  *Id.*

In addition, even if the case were to survive Defendants' pending motion to dismiss and make it to trial (an uncertain proposition), Defendants would present their own expert, who would no doubt supply the jury with a competing analysis supporting a damages range far below that calculated by Plaintiffs' consulting expert.  In the absence of a Settlement, there would be a considerable risk that the Court or jury would resolve the "battle of the experts" against Plaintiffs and the Class.[9]

---

[9]    *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761(CM), 2008 WL 2944620, at *5 (S.D.N.Y. July 31, 2008) (addressing significant risk of establishing damages at trial, particularly

Finally, and as further indicia of its reasonableness, the Settlement exhibits none of the "obvious deficiencies" that could justify denying preliminary approval. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In all respects, the terms embodied in the Stipulation are customary in nature. In particular, Plaintiffs' recovery from the Settlement Fund will be determined according to precisely the same formula as the recoveries of other Class Members, with the exception of any reimbursement to Plaintiffs of the costs incurred in representing the Class and so approved by the Court, as permitted by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).[10] Courts in this District have repeatedly recognized that preliminary approval is appropriate when it "does not improperly grant preferential treatment to class representatives or segments of the class." *In re NASDAQ Market-Makers*, 176 F.R.D. at 102; *see also In re Prudential Sec.*, 163 F.R.D. at 209 (finding preliminary approval appropriate when "'preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives'").

## II.   CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In connection with the grant of preliminary settlement approval, Plaintiffs request that the Court certify the Class, solely for purposes of the Settlement, under Rules 23(a) and (b)(3) of the

---

when, as here, "the crucial element of damages would likely be reduced at trial to a 'battle of the experts'").

[10]     *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2015) ("Courts in this Circuit routinely award such costs and expenses to both reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place.").

Federal Rules of Civil Procedure.  The proposed Class, which has been stipulated to by the Parties for the purposes of the Settlement, consists of:

> all persons and entities who purchased or otherwise acquired any Avon common stock from July 31, 2006, through and including October 26, 2011 (the "Class Period"), and who were damaged as to any shares purchased or acquired during any portion of the Class Period.

Stipulation ¶ 1(h).  Excluded from the Class are:  "(i) Defendants; (ii) members of the immediate families of the Individual Defendants; (iii) Avon's subsidiaries and affiliates; (iv) any current or former officer or director of Avon or any current or former officer or director of any of Avon's current or former subsidiaries or affiliates that were incorporated in or whose principal place of business is or was located in China during the Class Period; (v) any entity in which any Defendant has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any such excluded person or entity."  *Id.*  Also excluded from the Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.  *See id.* ¶ 7.[11]

"The law in the Second Circuit favors the liberal construction of Rule 23 . . . and courts may exercise broad discretion when they determine whether to certify a class."  *Aramburu v. Healthcare Fin. Servs.*, No. 02 CV 6535(ARR), 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005).  Indeed, the Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See, e.g.*, *Weinberger v. Kendrick*, 698 F.2d 61, 72-73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009).  In this regard, "[c]ertification of a settlement class has

---

[11]     Pursuant to the Stipulation, the "Avon Personal Savings Account Plan . . . is not excluded from the Class."  *Id.* ¶ 1(h).

been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX*, 283 F.R.D. at 186 (quoting *In re Giant Interactive*, 279 F.R.D. at 158) (internal quotation marks omitted).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems is not a consideration when settlement-only certification is requested.") (citation omitted).

As demonstrated below, certification of the Class for purposes of the Settlement is appropriate here because the proposed Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

### A.      The Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1.      The Class Members Are Too Numerous To Be Joined

Class certification under Rule 23(a)(1) is appropriate when a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but rather

"that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate," *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).  "[N]umerosity is presumed" when a class consists of forty members or more.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  "'In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'"  *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *see also Gatto v. Sentry Servs., Inc.*, No. 13 Civ. 5721(RMB)(GWG), 2014 WL 7338721, at *2 (S.D.N.Y. Dec. 19, 2014) (approving proposed settlement class of "'approximately 600 members'").

Here, the Class easily satisfies the numerosity requirement.  The Class is comprised of purchasers or acquirors of Avon common stock during a time period of just under sixty-three months.  At all times throughout the Class Period, Avon had over 420 million shares outstanding.  Thus, while the precise number of Class Members cannot be identified with specificity at this time, it most likely is in the tens of thousands at least.  Accordingly, the Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

### 2.     There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of at least one question "of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Cent. States*, 504 F.3d at 245; *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).  Securities fraud cases like this one easily meet the commonality requirement, which is satisfied when it is alleged that "'putative class members have been injured by similar material misrepresentations and omissions.'"  *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. Mar. 29, 2012); *see also In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that

Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met."); *In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 571 (S.D.N.Y. 2008) (noting "whether the [d]efendants' public statements . . . contained material misrepresentations or omissions in violation of Section 10(b), and whether [d]efendants acted with scienter" are common questions that suffice to support a finding of commonality).

Plaintiffs have asserted claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act that present many questions of law and fact common to all Class Members, including:

- Whether Defendants violated federal securities laws;

- With regard to the Section 10(b) claim, whether Defendants acted knowingly or with deliberate recklessness in making materially misleading statements and/or omissions during the Class Period;

- Whether the market prices of the Company's securities during the Class Period were artificially inflated because of Defendants' conduct; and

- Whether the members of the Class have sustained damages and, if so, the proper measure of damages.

*See* ECF No. 56 at ¶ 432.  Because these questions of law and fact are common to all members of the Class, the commonality requirement of Rule 23(a)(2) is met.

### 3.    Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States*, 504 F.3d at 245; *see also In re Pfizer*, 282 F.R.D. at 44; *In re Sadia*, 269 F.R.D. at 304-05.  "'Typical' does not mean 'identical.'" *See In re Marsh & McLennan*, 2009 WL 5178546, at *10.  The critical question is whether the proposed class representatives and the class can point to a common course of

conduct by defendants to support a claim for relief.  *Id.*  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct."  *Id.*; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, the injuries to Plaintiffs and the other members of the Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories.  Plaintiffs allege that they, like the rest of the Class, paid artificially inflated prices for Avon common stock during the Class Period as a result of materially misleading public statements and omissions by Defendants.  Accordingly, Plaintiffs' claims and the claims of absent Class Members are based on the same theories and would be proven by the same evidence.  The Rule 23(a)(3) typicality requirement is therefore satisfied.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards:  (1) whether the interests of the proposed class representatives "are antagonistic to" those of the class; and (2) whether their counsel are "'qualified, experienced and generally able' to conduct the litigation."  *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014).

Here, Plaintiffs are all sophisticated institutional investors with substantial financial stakes in the Action.  They have represented the interests of the class fairly and adequately, and will continue to do so.  Significantly, there is no antagonism or conflict of interest between Plaintiffs and the proposed Class.  Moreover, Plaintiffs and the other members of the Class share the common objective of maximizing their recovery from Defendants.  *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members." (citing *In re Drexel*, 960 F.2d at 291)).  In addition, Plaintiffs' Counsel has extensive experience and expertise in securities litigation and other class action proceedings throughout the United States.  *See, e.g.*, Motley Rice LLC's Shareholder and Securities Fraud Resume, attached as Ex. 3 to Levin Decl.  Plaintiffs' Counsel is well qualified and able to conduct this litigation.  Therefore, Rule 23(a)(4) is satisfied.[12]

### B.        The Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Class satisfies these requirements.

---

[12]        Plaintiffs respectfully submit that Lead Counsel has devoted substantial time and effort to the prosecution of the Action and will continue to fairly and adequately represent the interests of the Class.  Accordingly, Lead Counsel should also be appointed as class counsel for the Class under Rule 23(g).  *See, e.g.*, *Gatto*, 2014 WL 7338721, at *3 (appointing as class counsel "experienced and qualified counsel who have devoted significant time, effort, and resources to represent the class").

### 1.     Common Legal and Factual Questions Predominate

"'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *In re Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).   Common issues will predominate when each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages.   *See, e.g.*, *id.* at *11; *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) ("'In determining whether common questions predominate, a court's inquiry is directed toward whether the issue of liability is common to members of the class.'").   As the Supreme Court has noted, "[p]redominance is a test readily met" in cases alleging securities fraud.   *Amchem*, 521 U.S. at 625; *see also In re IMAX*, 283 F.R.D. at 187 (finding allegation that "defendants' allegedly fraudulent public statements caused damages to the settlement class" satisfied predominance requirement).

Here, the same alleged course of conduct by Defendants forms the basis of all Class Members' claims.   There are numerous common issues relating to Defendants' liability at the core of this action (including whether Defendants' statements were materially false and misleading and whether Defendants acted with scienter), which predominate over any individualized issues.   Therefore, the predominance requirement of Rule 23(b)(3) is satisfied.

### 2. A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Considering these factors, a class action clearly is "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of purchasers of Avon common stock during the Class Period. Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the costs of litigation. *See, e.g.*, *In re Marsh & McLennan*, 2009 WL 5178546, at *12 ("[The] class action is uniquely suited to resolving securities claims."); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("[A]s a general rule, securities fraud cases 'easily satisfy the superiority requirement [as][m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.'") (all but first alteration in original).

Here, the complexity of the claims against Defendants and the high cost of individualized litigation make it unlikely that the vast majority of Class Members would be able to obtain relief

without the requested class certification.  Accordingly, the requirements of Rule 23(b)(3) are satisfied.

### III.    NOTICE TO THE CLASS SHOULD BE APPROVED

"If the proposed settlement 'appears to fall within the range of possible approval,' the court should order that the class members receive notice [of the] settlement." *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531(FM), 2014 WL 2111693, at *1 (S.D.N.Y. May 12, 2014).

As outlined in the Preliminary Approval Order, Plaintiffs propose to give interested parties notice in two ways:  (i) by first-class mail, addressed to all Class Members who can reasonably be identified and located; and (ii) by publication notice in the *Investor's Business Daily* and dissemination over *PR Newswire*.  *See* Stipulation Exs. A & E.  The proposed forms of notice describe the terms of the Stipulation and the Class's recovery; the considerations that caused Plaintiffs and their counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for requesting exclusion from the Class; the procedure for objecting to the Settlement; the procedure for participating in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator; the proposed Plan of Allocation for the settlement proceeds; and the date, time, and place of the Settlement Fairness Hearing.  The Notice also provides contact information for Lead Counsel and counsel for Defendants, as well as information regarding the website created for the Settlement.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7), and is typical of Notice plans in similar actions.  Indeed, the Notice and Summary Notice "must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*,

698 F.2d at 70); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997) (finding settlement notice adequate when "level of detail apprises the class members of the salient terms of the settlement and affords them a reasonable opportunity to present any objections").  Accordingly, Plaintiffs respectfully submit that the proposed Notice and related procedures are appropriate and should be approved.

Plaintiffs also propose that the Court appoint KCC Class Action Services ("KCC") as the claims administrator for the Settlement.  KCC has been a claims administrator for more than twenty-five years and, during that time, has administered hundreds of securities class action settlements.  KCC has the experience to efficiently and accurately act as the claims administrator here.  *See* KCC Securities Case Experience, attached as Ex. 4 to Levin Decl.; *see also Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-00964-GPC-DHB, 2014 WL 3519064, at *5 (S.D. Cal. July 14, 2014) (appointing KCC as claims administrator and noting that "KCC specializes in providing administrative services for class-action litigation").

## PROPOSED SCHEDULE OF EVENTS

If the Court grants preliminary approval, Plaintiffs respectfully propose the following schedule for Settlement-related events in this case:

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | 30 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 14 calendar days after the Notice Date |
| Deadline for filing of papers in support of approval of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting exclusion requests or objections to the Settlement, the Plan of Allocation, or the application for attorneys' fees and expenses | 21 calendar days prior to the Settlement Hearing |

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for filing reply papers in support of approval of the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsel's application for attorneys' fees and expenses, and in response to any Settlement objections | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | November 20 or 23, 2015 |
| Deadline for submitting claims forms | Postmarked or received no later than 120 calendar days after the Notice Date |

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit C to the Stipulation, which will: (i) preliminarily approve the proposed Settlement as within the range of fairness, reasonableness, and adequacy; (ii) certify the Class for purposes of the Settlement and appoint Plaintiffs as class representatives and Lead Counsel as class counsel; (iii) approve the proposed form and manner of notice to Class Members; (iv) appoint KCC as Claims Administrator; and (v) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Respectfully submitted,

Dated:  August 18, 2015

MOTLEY RICE LLC

By: /s/ Gregg S. Levin
Gregg S. Levin
William S. Norton
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Tel:    (843) 216-9000
Fax:    (843) 216-9450
glevin@motleyrice.com
bnorton@motleyrice.com

WOLF POPPER LLP

By: /s/  Lester L. Levy
Lester L. Levy
Joshua W. Ruthizer
845 Third Avenue
New York, NY 10022
Telephone:  (212) 759-4600
Facsimile:  (212) 486-2093
llevy@wolfpopper.com
jruthizer@wolfpopper.com

-and-

William H. Narwold
One Corporate Center
20 Church St., 17th Floor
Hartford, CT  06103
Tel:     (860) 882-1676
Fax:     (860) 882-1682
bnarwold@motleyrice.com

*Lead Counsel and Counsel for Lead Plaintiffs*
*LBBW Asset Management*
*Investmentgesellschaft mbH and SGSS*
*Deutschland Kapitalanlagegesellschaft mbH*

*Counsel for Named Plaintiff Metropolitan*
*Water Reclamation District Retirement Fund*

BERMAN DEVALERIO

By: /s/  *Bryan A. Wood*                    
Bryan A. Wood
One Liberty Square
Boston, MA  02109
Tel:     (617) 542-8300
Fax:     (617) 542-1194
bwood@bermandevalerio.com

*Counsel for Named Plaintiffs City of Brockton*
*Retirement System and the Louisiana*
*Municipal Police Employees' Retirement*
*System*

*- All Plaintiffs' counsel consent to the use of their electronic signatures. -*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2015, I caused the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for (i) Preliminary Approval of Settlement, (ii) Certification of a Settlement Class, and (iii) Approval of Notice to be served by the Court's Electronic Case Filing system upon:

| | |
|---|---|
| Peter C. Hein | Reid M. Figel |
| Courtney L. Shike | Jessica C. Collins |
| Wachtell, Lipton, Rose & Katz | Kellogg, Huber, Hansen, Todd, |
| 51 West 52nd Street | Evans & Figel, P.L.L.C. |
| New York, NY  10019 | 1615 M Street, NW, Suite 400 |
| PCHein@wlrk.com | Washington, DC  20036 |
| CLShike@wlrk.com | rfigel@khhte.com |
| | jcollins@khhte.com |
| *Attorneys for Defendants* | |
| *Avon Products, Inc. and Andrea Jung* | *Attorneys for Defendant Charles W. Cramb* |

Dated: August 18, 2015  
      Mt. Pleasant, SC

                                    /s/ *Gregg S. Levin*  
                                      Gregg S. Levin  
                                      MOTLEY RICE LLC