USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/25/16__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF BROCKTON RETIREMENT
SYSTEM, Individually and On Behalf of All
Others Similarly Situated

                Plaintiffs,

- against -

AVON PRODUCTS, INC., et al.
                Defendants.

**ORDER**

11 Civ. 4665 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On December 1, 2015, this Court conducted a hearing on Lead Counsel's motion for attorneys' fees, reimbursement of litigation expenses, and reimbursement of Lead Plaintiffs' expenses. Lead Counsel seeks an award of $18.6 million, equal to 30% of the $62 million settlement fund, $191,816 in reimbursement of litigation expenses, and $16,790 in reimbursement of Lead Plaintiffs' expenses. (See Dkt. No. 82)

## BACKGROUND

This case involves securities fraud claims against Avon Products and related defendants. The crux of Plaintiffs' arguments is that Avon fraudulently stated that its safeguards were adequate to ensure compliance with the Foreign Corrupt Practices Act, when in fact the Company's compliance regime was ineffective and Avon employees were engaged in widespread corrupt practices in emerging markets. (See Second Am. Cmplt. (Dkt. No. 56) at ¶¶ 3-5) These corrupt practices gave rise to two multi-year SEC investigations, which concluded in May 2014 with (1) Avon's China subsidiary pleading guilty to violations of the FCPA; (2) Avon's agreement to supervision by an external compliance monitor for an eighteen-month

period; and (3) Avon paying a variety of fines to the U.S. Department of Justice and the SEC. (Id. at ¶¶ 9-11)

This Court granted Defendants' first motion to dismiss on September 29, 2014. (Dkt. No. 55) Plaintiffs filed a Second Amended Complaint on October 24, 2014. (Dkt. No. 56) On January 21, 2015, Defendants moved to dismiss the Second Amended Complaint. (Dkt. No. 61) This motion was not decided, however, because the parties entered into a settlement agreement. (Dkt. No. 71) This Court granted preliminary approval to the $62 million settlement on August 21, 2015. (Dkt. No. 77) The proposed settlement will compensate class members for approximately 1.86 % of estimated losses, based on expert analyses estimating that the Class suffered $3.3 billion in damages. (See Brief in Support of Settlement (Dkt. No. 80) at 26)

## DISCUSSION

The Court is responsible for setting a reasonable attorneys' fee to be taken from the settlement fund. See Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) ("[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class[,] . . . . the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund.") Here, Lead Counsel seeks an attorneys' fee award in the amount of $18.6 million – equal to 30% of the settlement fund – and an additional $191,816.80 in reimbursement of litigation expenses, plus interest on both amounts at the same rate earned by the Settlement Fund. (Levin Decl. (Dkt. No. 83) at ¶¶ 77-78) Pursuant to the PSLRA provision permitting a court to award reasonable expenses to representative parties, 15 U.S.C. § 78u-4(a)(4), Lead Plaintiffs seek reimbursement in the amount of $16,790. (Id. at ¶ 116)

2

## A.  *Goldberger* **Factors**

In evaluating the reasonableness of a requested attorneys' fee award, the Second

Circuit has instructed that

> district courts should continue to be guided by the traditional criteria in
> determining a reasonable common fund fee, including: "(1) the time and labor
> expended by counsel; (2) the magnitude and complexities of the litigation; (3) the
> risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in
> relation to the settlement; and (6) public policy considerations."

Goldberger, 209 F.3d at 50.  In other words, "a fee award should be assessed based on scrutiny

of the unique circumstances of each case. . . ."  Id. at 53.  Accordingly, while attorneys' fee

awards in similar cases may serve as useful guideposts when evaluating the reasonableness of a

fee application, they are not dispositive as a measure of a reasonable attorneys' fee award in any

given case.

Courts in this Circuit may use either the lodestar method or the percentage-of-the-

fund method to determine an appropriate attorneys' fee award.  Wal-Mart Stores, Inc. v. Visa

U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005).  "The trend in this Circuit[, however,] is toward

the percentage method . . . which 'directly aligns the interests of the class and its counsel and

provides a powerful incentive for the efficient prosecution and early resolution of litigation.'"

Id.  Here, Lead Counsel has requested a fee equal to 30% of the settlement fund.

### 1.    **Time and Labor Expended by Counsel**

Lead Counsel expended significant time and labor to resolve this matter over a

four year period.  They litigated the identity of the Lead Plaintiff for this action, prepared a total

of three complaints, and battled (and ultimately lost) a motion to dismiss.  They also prepared

materials for mediation sessions and participated in two days of settlement negotiations.  Their

3

efforts were of significant value to the Class, given that they were able to procure a $62 million

settlement despite the pleading issues that resulted in the dismissal of the Amended Complaint.

Lead Counsel's time and labor must be considered in light of the time and labor

that plaintiffs' attorneys generally devote in similar actions, however. Here, Lead Counsel and

staff billed a combined 6234.10 hours to this matter. (Levin Decl. (Dkt. No. 83) ¶ 100)  While

sufficient to achieve an excellent result, counsel here billed far fewer hours than counsel in other

high-value class action lawsuits.  See, e.g., In re Tremont Securities Law, State Law and Ins.

Litig., No. 08-cv-1117, 2015 WL 5333494, at *9 (S.D.N.Y. Sept. 14, 2015) (counsel performed

more than 25,000 hours of work in connection with the settlement); In re Marsh ERISA Litig.,

265 F.R.D. 128, 136-37 (S.D.N.Y. 2010) (plaintiffs' lawyers "review[ed] many millions of pages

of documents and participat[ed] in about 100 depositions").

Accordingly, in the context of this case and the size of the award that is sought,

the time and labor factor is neutral.

### 2.   Magnitude and Complexities of the Litigation, Risk of Litigation, and Quality of Representation

"Federal courts have long recognized that securities class litigation "'is notably

difficult and notoriously uncertain."'"  In re Merrill Lynch & Co., Inc. Research Reports Sec.

Litig., No. 02 MDL 1484(JFK), 2007 WL 313474, at *14 (S.D.N.Y. Feb. 1, 2007).  This action

is no exception.  This case presents complex factual issues about Foreign Corrupt Practices Act

policies, the alleged falsity of Defendants' statements regarding those policies, and the extent to

which the drop in Avon's stock price was caused by Avon's alleged wrongdoing.  Moreover – as

Defendants discussed in their motions to dismiss – this case presents significant legal issues as to

the adequacy of Plaintiffs' allegations concerning falsity, scienter, causation, and damages. (See Dkt. No. 62)

As to the risks of litigation, Lead Counsel undertook this case on a contingent fee basis, thus bearing the risk that no recovery would be achieved. (Levin Decl. (Dkt. No. 83) ¶ 87) Moreover, the possibility that Lead Counsel would recover nothing in this action was not merely theoretical: the initial motion to dismiss was granted, and Defendants' second motion to dismiss was fully briefed months before the parties settled.

Regarding the quality of representation, Lead Counsel has diligently represented the Class, and counsel should be rewarded for the exceptional result that their efforts have produced. The three firms representing plaintiffs are experienced, successful class action securities litigators. (Id. at ¶¶ 103-06) That they were able to obtain a settlement providing real value to the Class is further proof of the quality of their representation. On the other hand, the Amended Complaint did not survive a motion to dismiss, and it is far from clear that the Second Amended Complaint would have survived a motion to dismiss.

In sum, the magnitude, complexity, and risk of this litigation all weigh in favor of approving Plaintiff's fee request. The quality of representation factor is neutral.

### 3. Requested Fee in Relation to the Settlement Fund

Lead Counsel seeks an attorneys' fee award of $18.6 million. This is equal to 30% of the $62 million settlement fund. "In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund." In re Beacon Associates Litig., No. 09 Civ. 777(CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); see, e.g., In re Marsh ERISA Litig., 265 F.R.D. at 146 (approving attorneys' fees in the amount of one-third of the $35 million recovery).

5

However, where – as here – the settlement fund is very large, courts commonly use a "sliding scale" approach to determine the appropriate fee for plaintiffs' counsel. Under this approach, the attorneys' fee award as a percentage of the recovery shrinks as the absolute value of the settlement grows. In re Independent Energy Holdings PLC, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) ("[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent."); see also In re IndyMac Mortgage-Backed Sec. Litig., 94 F.Supp.3d 517, 525 (S.D.N.Y. 2015) ("In light of the \$346 million recovery for the class, it is eminently sensible that the fee percentage should be smaller than in a more typical litigation."); Goldberger, 209 F.3d at 52 ("'Obviously, it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case.'"). Empirical data confirms that attorneys' fee awards reflect smaller percentages of settlement funds in cases where the settlement amount is greater than \$50 million, as it is here. For example, in Goldberger, the Second Circuit noted that "in cases . . . with recoveries of between \$50 and \$75 million, courts have traditionally accounted for these economies of scale by awarding fees in the lower range of about 11% to 19%." Goldberger, 209 F.3d at 52 (citing William J. Lynk, The Courts and the Plaintiff's Bar: Awarding the Attorney's Fee in Class-Action Litigation, 23 J. Legal Stud. 185, 202 (1994); 1 Conte, Attorney Fee Awards § 2.09).

More recent empirical data, cited in In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d 344, 350-51 (S.D.N.Y. 2014) (citing Theodore Eisenberg and Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements: 1993-2008, 7 J. Empirical Legal Stud. 248 (2010)), confirm that attorneys' fee awards tend to be less than 30% in cases where the

6

settlement fund is of the size at issue here. According to the 2010 Eisenberg-Miller study – for settlements in a range between \$38 million and \$69 million – the mean percentage award is 20.5% and the median award is 21.9%. Eisenberg & Miller, Attorney Fees at 263. In the Southern District of New York, the mean and median percentage attorneys' fees award for cases involving settlements within the \$38 to \$69 million range is 22%. Id. at 258.

Accordingly, the requested award of 30% of the \$62 million settlement fund is significantly higher than awards in similar cases that courts in this District regularly approve.

### 4. Public Policy Considerations

Attorneys' fee awards implicate competing public policy considerations. On one hand, "[p]articularly in the securities context, courts 'have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis . . . on behalf of those who otherwise could not afford to prosecute.'" In re Marsh ERISA Litig., 265 F.R.D. 128, 150 (S.D.N.Y. 2010). On the other hand, district courts must be cautious about over-compensating plaintiffs' attorneys at the expense of the class, in light of their "duty 'to act as a fiduciary who must serve as a guardian of the rights of absent class members." McDaniel v. County of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010). Accordingly, the public policy factor is neutral here.

### B. Lodestar Cross-Check

Although use of the percentage method is the "trend" in this Circuit, district courts are "encourage[d]" to look to the lodestar "as a 'cross check' on the reasonableness of the requested percentage." Goldberger, 209 F.3d at 50. When conducting such a "cross-check" review, "the hours documented by counsel need not be exhaustively scrutinized by the district court," but can instead be "tested by the court's familiarity with the case." Id.

7

To calculate the lodestar "cross-check," the district court "multiplies hours reasonably expended against a reasonable hourly rate." Wal-Mart, 396 F.3d at 121 (citing Goldberger, 209 F.3d at 47). "'Under the lodestar method of fee computation, a multiplier is typically applied to the lodestar. The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'" In re Gilat Satellite Networks, Ltd., No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *17 (E.D.N.Y. Sept. 18, 2007). In addition to determining the appropriate lodestar multiplier, "[c]ourts typically . . . utilize the lodestar method to confirm that the percentage amount does not award counsel an exorbitant hourly rate." In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005).

Here, the requested attorneys' fee award is based on 6,234.10 hours billed by Lead Counsel, their employees, and contractors in prosecuting this action. (Levin Declaration (Dkt. No. 83) at ¶ 100) These hours reflect work performed over more than four years, from the investigation of the claims and the drafting of the initial class action complaint, through the many hours spent reaching a negotiated resolution, including participation in two mediation sessions. The hourly billing rates among Plaintiffs' counsel and their staff range from $300 per hour to $975 per hour, producing a lodestar of $3,756,200.25. (Id. at ¶ 101-02) Based on the $18.6 million award sought, the lodestar yields a multiplier of approximately 4.95.

A lodestar multiplier of 4.95 is much higher than the multipliers typically seen in settlements in this District in recent years. See In re Tremont Sec. Law, State Law & Ins. Litig., 2015 WL 5333494, at *10 (stating that a lodestar multiplier of 2.5 is "at the high end of what courts in this Circuit are willing to award"); In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 2007 WL 313474, at *23 (noting that "'post-Goldberger courts . . . have generally

8

refused multipliers as high as 2.03'" and rejecting the argument that "multipliers in the range of

3.0 to 4.5 are common" in the Southern District of New York).  In those cases in which courts

have approved a comparable percentage award in the context of a comparable settlement fund,

the lodestar multiplier has been significantly lower.  See, e.g., In re Amaranth Natural Gas

Commodities Litig., 2012 WL 2149094, at *2 (S.D.N.Y. June 11, 2012) (approving 30% award

where settlement fund was $77 million; lodestar multiplier of less than 1.00); In re Bisys

Securities Litig., No. 04 Civ. 3840(JSR), 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007)

(approving 30% award where settlement fund was $65 million; lodestar multiplier of 2.99); In re

Merrill Lynch, 2007 WL 313474, at *23 (rejecting a 2.43 lodestar multiplier and lowering the fee

to a 1.95 multiplier where the settlement fund was $39 million); In re Priceline.com, Inc. Sec.

Litig., No. 3:00-CV-1884(AVC), 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (approving

30% award where settlement fund was $80 million; lodestar multiplier of 1.98).

        In those cases in which courts have granted attorneys' fee awards with lodestar

multipliers comparable to the requested multiplier here, the attorneys' fees were lower, either in

absolute terms or as a percentage of the settlement fund.  Moreover, in these cases, courts cited

unusual circumstances in justifying the high multiplier.  See, e.g., In re Colgate-Palmolive Co.

ERISA Litig., 36 F. Supp. 3d at 347, 350 (approving award of 25% of $45 million settlement;

lodestar multiplier of 5.2; noting that the median attorneys' fee award in ERISA cases tends to be

slightly higher than the median fee for other class settlements because "ERISA concerns a highly

specialized area of law"); Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 368-71

(S.D.N.Y. 2002) (approving one-third award in the context of an $11.5 million settlement;

lodestar multiplier of 4.65; settlement amount represented a return of 41% of maximum

damages); Roberts v. Texaco, Inc., 979 F. Supp. 185, 197-98 (S.D.N.Y. 1997) (approving

9

16.66% award where settlement fund was $115 million; lodestar multiplier of 5.5; noting that "the result achieved was one that captured national attention and focused upon the importance of private attorneys general in enforcement of the proscriptions against racial discrimination in the workplace").

Moreover, were this Court to approve the requested attorneys' fee award, it would be approving an average billable rate of $2,983.59 per hour. Although there is no bright-line ceiling for acceptable hourly rates in this context, an hourly rate of $2,983.59 is clearly excessive. A proposed average hourly rate of $1,193.51, for example, was rejected as "exorbitant" in In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 2007 WL 313474, at *23. In another recent case in this District, the court referred to the average hourly rate of $810.71 as "quite excessive." In re IndyMac Mortgage-Backed Securities Litigation, 94 F. Supp. 3d at 524 (reducing plaintiffs' proposed attorney's fee award from 13% of the $346 million settlement to a fee between 8 and 10 percent).

Accordingly, the lodestar cross-check indicates that the requested attorneys' fee award is excessive and unreasonable.

## C.   **Reasonable Attorneys' Fee Award**

Acknowledging that this case presents significant legal issues as to falsity, scienter, causation, and damages, that is hardly unusual in a class action securities fraud case in this District. Under the circumstances here – a $62 million settlement fund, and a fee request of $18.6 million, which represents 30% of the settlement amount – this Court concludes that a lodestar multiplier of 2.99 represents the outer limit of an appropriate attorneys' fee award.

In In re Bisys Securities Litig., 2007 WL 2049726, at *3, Judge Rakoff approved a 30% fee amounting to $19 million, correlating with a lodestar multiplier of 2.99. In that case,

10

however, Judge Rakoff – in approving the fee request – cited the extensive discovery that had taken place and the fact that the class recovered one-third of its total damages. Neither of these factors is present here. Moreover, as discussed above, where multipliers higher than 2.99 have been approved, courts confronted unusual circumstances not present here.[1]

A lodestar of 2.99 here correlates with an attorneys' fee award of $11,231,038.74. This fee amounts to approximately 18.11% of the settlement fund. Although this percentage is slightly lower than the mean fee typically awarded in cases of this magnitude – as discussed in Eisenberg and Miller's 2010 study – the settlement amount here is at the high end of the range of settlements in the applicable study category.

This fee amount correlates with an average hourly rate of approximately $1,800, which is far above what other judges have found appropriate. Nonetheless, this fee amount appears appropriate here given, inter alia, the risks taken by Lead Counsel and the fact that

---

[1] After the December 1, 2015 fairness hearing, Lead Counsel submitted a letter arguing that the case law in this District supports an award correlating with a lodestar of 4.95. (Dkt. No. 89) Two of the decisions that counsel cites are proposed orders that were drafted by plaintiffs' counsel. See Cornwell v. Credit Suisse Grp., No. 08-cv-3758 (Dkt. No. 117) (S.D.N.Y. July 18, 2011); In re DHB Industries, Inc. Class Action Litig., No. 2:05-cv-4296-JS-ETB (E.D.N.Y. July 18, 2011). The persuasive value of such decisions is limited. See, e.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) ("there is reason to be wary" of case law in the form of "proposed orders drafted by the class action plaintiffs' bar and entered with minimal, if any, edits by judges").

Only City of Livonia Emps.' Ret. Sys. v. Wyeth, No. 07 Civ. 10329(RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013), provides any support for a lodestar multiplier higher than 2.99. In that case, Judge Sullivan awarded attorneys' fees of 20% of the $67.5 million settlement, representing a lodestar multiplier of 3.45. In Wyeth, however, counsel had litigated discovery issues, sought and achieved class certification, analyzed more than 1.3 million pages of discovery documents from the defendants, and taken several depositions. (See 07-cv-10329 (Dkt. No. 119) at ¶¶ 31-32, 37, 44, 53, 56) Given the stage of that case at the time of settlement, a higher lodestar was justified.

counsel was able to obtain a substantial settlement even after the Amended Complaint had been dismissed, and where a motion to dismiss the Second Amended Complaint was sub judice.

## D. Litigation Costs

Lead Counsel seeks $191,816.80 in reimbursement for litigation expenses incurred in connection with this matter. (Levin Decl. (Dkt. No. 83) ¶ 78) The expenses for which counsel seeks reimbursement are of the type that are normally incurred in the course of litigation and routinely charged to clients, including, inter alia, computer-based research, mediator and expert fees, and overnight delivery expenses. (See Levin Decl. (Dkt. No. 83) ¶ 111) Because "'[a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients,'" In re Warner Chilcott Ltd. Sec. Litig., 06 Civ. 11515 (WHP), 2009 WL 2025160, at *5 (S.D.N.Y. July 10, 2009), Lead Counsel will be awarded reimbursement for the costs of litigation.

## E. Lead Plaintiffs' Award

The PSLRA permits a court to award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." Hicks v. Stanley, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

According to the Notice of Settlement disseminated to the Class, Lead Plaintiffs are permitted to seek reimbursement for expenses up to $45,000. (Notice of Settlement (Dkt.

12

No. 74-1) at 43)  Their actual expenses are $16,790 (see Levin Decl. (Dkt. No 83) ¶ 116), and Lead Plaintiffs seek an award in that amount.

The proposed award of $16,790 would reimburse Lead Plaintiffs for the 123 hours they spent conferring with counsel, reviewing filings, evaluating status reports, disseminating document retention letters to their employees, searching and compiling relevant documents for potential production to Defendants, reviewing mediation materials, analyzing and responding to settlement proposals, and communicating with counsel regarding those settlement materials.  (See, e.g., Levin Decl. (Dkt. No 83) ¶116; Ex. B (LBBW Decl.) at ¶ 5; Ex C. (SGSS Decl.) at ¶ 5)

This amount is on par or lower than other awards granted to lead plaintiffs in comparable cases.  In re American Intern. Group, Inc. Sec. Litig., No. 04 Civ. 8141(DAB), 2010 WL 5060697, at *3 (approving a $30,000 lead plaintiff award); In re Marsh & McLennan Companies, Inc. Sec. Litig., No. 04 Civ. 8144(CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $214,657.14 to lead plaintiffs).

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that

(1) Lead Counsel's motion for attorneys' fees is granted, and counsel is hereby awarded:

> a. attorneys' fees in the amount of $11,231,038.74, plus interest at the same rate earned by the Settlement Fund; and
>
> b. payment of litigation expenses in the amount of $191,816.80, plus interest at the same rate earned by the Settlement Fund, which sums the Court finds to be fair and reasonable.

13

(2) In accordance with 15 U.S.C. § 78u-4(a)(4), the Court hereby awards Lead Plaintiffs and

Named Plaintiffs reimbursement of their reasonable expenses directly related to their

representation of the Class in the following amounts:

| | |
|---|---|
| LBBW Asset Management Investmentgesellschaft mbH: | $2,310 |
| Société Générale Securities Services GmbH: | $2,730 |
| City of Brockton Retirement System: | $2,250 |
| Metropolitan Water Reclamation District Retirement Fund: | $5,000 |
| Louisiana Municipal Police Employees' Retirement System: | $4,500 |

(3) The award of attorneys' fees and expenses, as well as the reimbursement of Lead

Plaintiffs' and Named Plaintiffs' costs and expenses, shall be paid to Lead Counsel from

the Settlement Fund promptly upon entry of both the Judgment approving the Settlement

and this Order awarding fees and expenses, subject to the terms, conditions, and

obligations of the Stipulation, which terms, conditions, and obligations are incorporated

herein.

Dated: New York, New York          SO ORDERED.
       August 24, 2016

_____
Paul G. Gardephe
United States District Judge

14